UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

August 1, 2017

LETTER TO COUNSEL

      RE:    *Lattesha Kirkland v. Commissioner, Social Security Administration*;
               Civil No. SAG-16-3194

Dear Counsel:

On September 19, 2016, Plaintiff Lattesha Kirkland petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and the supplemental briefing filed by each side. (ECF Nos. 10, 13, 15, 18). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the judgment of the Commissioner, and remand the case to the Commissioner for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Ms. Kirkland filed her claim for Disability Insurance Benefits on May 4, 2012, originally alleging a disability onset date of February 12, 2010. (Tr. 199-200). Her claim was denied initially and on reconsideration. (Tr. 106-09, 111-12). A hearing was held on June 25, 2015, before an Administrative Law Judge ("ALJ"). (Tr. 26-60). Following that hearing, the ALJ determined that Ms. Kirkland was not disabled during the relevant time frame. (Tr. 7-25). The Appeals Council denied Ms. Kirkland's request for review, (Tr. 1-4), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Kirkland suffered from the severe impairments of osteoarthritis, meniscus tear, patellofemoral syndrome, idiopathic neuropathy, and personality disorder. (Tr. 12). Despite these impairments, the ALJ determined that Ms. Kirkland retained the residual functional capacity ("RFC") to:

> perform less than a full range of sedentary work as defined in 20 CFR 404.1567(a). The claimant is limited to lifting and carrying from waist to chest level. The claimant can walk no longer than one block at a time on a flat even surface at a slow pace. The claimant requires a sit and stand option about every 15-30 minutes, and she needs to use a cane as necessary. The claimant has to avoid crawling, kneeling, crouching and climbing ladders, ropes and scaffolds,

> but she can stoop occasionally. The claimant requires work involving no more than limited education. The claimant has to avoid constant interpersonal interaction with the public, coworkers and supervisors. The claimant has to avoid constant fingering, grasping and handling. The claimant has to avoid working around hazards, such as moving dangerous machinery and unprotected heights.

(Tr. 15). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Kirkland could perform jobs existing in significant numbers in the national economy and that, therefore, she was not disabled. (Tr. 18-20).

Ms. Kirkland raises several arguments on appeal: (1) that the ALJ failed to properly evaluate the opinion of her treating physician, Dr. Quainoo; (2) that the ALJ provided an inadequate Listing analysis; (3) that the ALJ failed to evaluate evidence proffered by the VE; and (4) that the ALJ should have deemed her right shoulder pain and carpal tunnel syndrome to be severe impairments.[1] Pl. Mot. 6-20. I concur that the ALJ did not consider Dr. Quainoo's opinion, and that remand is warranted. In addition, in a supplemental filing, Ms. Kirkland argues that the ALJ did not comply with the Fourth Circuit's recent decision in *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir. 2017). However, because this case is being remanded on other grounds, I need not reach the *Lewis* issue. On remand, the ALJ should assess Ms. Kirkland's credibility based on both her subjective statements and the medical evidence, in accordance with *Lewis*.

Beginning with the successful argument, Ms. Kirkland contends that the ALJ did not assign weight to the opinion of a treating physician, Dr. Quainoo. Pl. Mem. 13-14. A treating physician's opinion is given controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and 2) it is consistent with other substantial evidence in the record. *See Craig*, 76 F.3d 585 (4th Cir. 1996); *see also* 20 C.F.R. § 416.927(d)(2). However, where a treating source's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig*, 76 F.3d at 590. If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, such as, the length and nature of the treatment relationship, the degree to which the opinion is supported by

---

[1] Ms. Kirkland also argues that the ALJ failed to support several limitations in the RFC assessment with substantial evidence. Pl. Mot. 9 (disputing the ALJ's "RFC determination…with regards to claimant's limitations in ambulating, including slow place no more than a block at a time, with the use of assistive devices[.]"); *id.* at 10 (disputing the ALJ's restriction to "sedentary" work); *id.* at 11 (arguing that the record indicated greater limitations regarding Ms. Kirkland's exertional and non-exertional limitations, and citing Ms. Kirkland's "severe physical knee and shoulder pain…[and] inability to maintain attention and concentration[.]"); *id.* at 11-12 (arguing that the ALJ failed to include limitations addressing Ms. Kirkland's "drowsiness and nausea, her need to have her legs elevated when sitting…, her inability to perform various activities of daily living," and her inability to "concentrate and maintain memory[.]"); *id.* at 13 (disputing the ALJ's limitations for "a sit/stand option every 15 – 30 minutes," "lifting and carrying from waist to chest level," "work involving no more than limited education," avoiding "constant fingering, grasping and handling," and avoiding "constant interpersonal interaction with the public, coworkers and supervisor."); *id.* at 19 (disputing the ALJ's "sitting and standing" limitation); *id.* at 19-20 (disputing the ALJ's nonexertional limitations). Because the case is being remanded on other grounds, the ALJ should, on remand, support the limitations in the RFC assessment with substantial evidence.

the record as a whole, and any other factors that support or contradict the opinion. 20 C.F.R. § 416.927(c)(1)-(6). The Commissioner must also consider, and is entitled to rely on, opinions from non-treating doctors. *See* SSR 96-6p, at *3 ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

In this case, the ALJ failed to properly evaluate Dr. Quainoo's opinion. Dr. Quainoo opined that "[Ms. Kirkland] could sit, stand and walk less than two hours within an eight-hour workday, rarely stoop, would absent (*sic*) from work more than four days per month and would need to take a 30-minute unscheduled break every two hours." (Tr. 17). Additionally, Dr. Quainoo opined that Ms. Kirkland had "osteoarthritis of the knee, right shoulder pain, genital herpes and other idiopathic peripheral neuropathy." *Id*. Moreover, Dr. Quainoo opined that Ms. Kirkland had "left shoulder pain with radiculopathy and recommended she take Gabapentin for pain, with Motrin on an as needed basis." *Id.* However, the ALJ failed to assign specific weight to Dr. Quainoo's opinion. Although implicit assignments of weight can support meaningful review, *Shaffer v. Comm'r, Soc. Sec.*, No. CIV. SAG-10-1962, 2012 WL 707098, at *2 (D. Md. Mar. 2, 2012) (citation omitted), Social Security regulations require an ALJ to "always give good reasons in [the] notice of determination or decision for the weight" given to a claimant's treating source's opinion. 20 C.F.R. § 404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley v. Comm'r Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (citing SSR 96-2p, 1996 WL 374188, at *5). Thus, an ALJ's failure to identify "the reasons for discounting [a treating physician's] opinions," and explain "precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Valley v. Astrue*, No. 3:11-CV-260-HEH, 2012 WL 3257861, at *17 (E.D. Va. June 22, 2012), report and recommendation adopted, No. 3:11CV260-HEH, 2012 WL 3257876 (E.D. Va. Aug. 8, 2012) (internal citation and quotation marks omitted).

Here, the basis for the ALJ's evaluation of Dr. Quainoo's opinion is not sufficiently clear to permit meaningful review. The entirety of the ALJ's analysis states: "Dr. Quainloo's (*sic*) opinion that [Ms. Kirkland] can do less than sedentary exertional level work is not supported by his own progress notes and physical examination findings. Also, Dr. Quainloo's (*sic*) opinion is not consistent with [Ms. Kirkland's] good activities of daily living." (Tr. 17). The ALJ provided no other evidence to support an implicit assignment of weight to Dr. Quainoo's opinion. Indeed, the ALJ's conclusory analysis failed to cite to any specific evidence in the record supporting his assessment. For example, the ALJ failed to explain what physical examination findings were inconsistent with Dr. Quainoo's opinion, or how those findings undermined Dr. Quainoo's conclusion that Ms. Kirkland required more restrictive limitations in her RFC assessment. *Id.* Additionally, although the ALJ cited Ms. Kirkland's "good" activities of daily living to discredit Dr. Quainoo's opinion, the ALJ did not identify those activities and also credited conflicting testimony regarding the severity of Ms. Kirkland's limitations in sitting, standing, and walking, by including corresponding restrictions in the RFC assessment. (Tr. 16). In light of the evidence

of record, the ALJ failed to provide sufficient explanation of his reasons for discrediting Dr. Quainoo's opinion. *Valley*, 2012 WL 3257861, at *17. Remand is therefore appropriate. In remanding for additional explanation, I express no opinion as to whether or not the ALJ's ultimate conclusion that Ms. Kirkland was not entitled to benefits is correct or incorrect.

Turning to the less persuasive arguments, Ms. Kirkland contends that the ALJ did not engage in a proper analysis of Listing 1.02.[2] Specifically, the ALJ in this case found as follows:

> [Ms. Kirkland] does not meet the listing at 1.02A for bilateral knee disorders. To meet the listing, [Ms. Kirkland's] bilateral knee disorder(s) must be characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or abnormal motion of affected joint, and joint space narrowing, bony destruction, or ankylosis of the affective joint: with involvement of one major peripheral weight-bearing joint resulting in an inability to ambulate effectively. Although [Ms. Kirkland's] February 2015 MRI of the left knee was abnormal, the evidence of record shows [Ms. Kirkland] is able to ambulate effectively as defined in 1.00B2b. Dr. Frank Henn's March 2014 examination revealed that [Ms. Kirkland] had a normal gait, with stability intact in all planes on the left. Her left lower extremity was also neurologically intact and her strength was 5/5. Also, when Dr. Quainoo saw [Ms. Kirkland] in January and February 2015 [she] ha[d] no weakness or stumbling. [Ms. Kirkland] ambulated without an assistive device with no obvious gate (*sic*) disturbance.

(Tr. 14) (citing (Tr. 417-39, 445-47)). The ALJ engaged in the required analysis of Listing 1.02 and cited to record evidence in support of his conclusion that the Listing was not met. Notably, in the RFC assessment, the ALJ cited to substantial evidence from the record "connecting his determination to that of [Ms. Kirkland's] failure to meet the listing impairment[.]" *Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015). For example, the ALJ noted that Ms. Kirkland "walked with a normal gait," "had a painless range of motion of the back and hips," had a "functional" range of motion in her knees "with no instability," and "had 5/5 strength and was neurologically intact." (Tr. 16) (citing (Tr. 445-47)). Additionally, the ALJ noted that Ms. Kirkland had "no swollen or tender joints," *id.*, "no crepitus or swelling of the knee," (Tr. 17), "no obvious gait disturbances and no restricted range of motion involving any joint," *id.* Ultimately, Ms. Kirkland's argument about the inadequacy of the Listing analysis focuses on the weight the ALJ assigned to certain pieces of evidence over other pieces of evidence. *See* Pl. Mot. 7-10. That inquiry is not permissible, since this Court's role is not to reweigh the evidence

---

[2] Ms. Kirkland also contends that the ALJ erred by failing "to specifically consider or note why he didn't consider Listing 11.14 for Peripheral Neuropathy[.]" Pl. Mot. 8. However, an ALJ only has to identify a listing and compare the evidence to the listing requirements where there is ample evidence to suggest that the listing is met. *See Huntington v. Apfel,* 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler,* 783 F.2d 1168, 1172 (4th Cir. 1986)); *Ketcher v. Apfel,* 68 F. Supp. 2d 629, 645 (D. Md. 1999) (noting that the "duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments"). In this case, the ALJ was not required to consider Listing 11.14 because the record does not contain ample evidence to suggest that the Listing has been met.

or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Accordingly, I find that the ALJ properly evaluated Listing 1.02 and supported his conclusion with substantial evidence. Therefore, remand is not warranted on this basis.

Next, Ms. Kirkland argues that the ALJ erred in disregarding testimony by the VE that she was not eligible for work.[3] Pl. Mot. 14-17. As an initial matter, an ALJ is afforded "great latitude in posing hypothetical questions," *Koonce v. Apfel*, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999), and need only pose those that are based on substantial evidence and accurately reflect a claimant's limitations. *See Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988). Likewise, a hypothetical question is unimpeachable if it adequately reflects the RFC for which the ALJ had sufficient evidence. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005). In this case, the ALJ framed a hypothetical based on the RFC. (Tr. 55-56). In response, the VE stated that Ms. Kirkland could perform several jobs existing in the national economy. (Tr. 56). Subsequently, Ms. Kirkland's attorney asked a second hypothetical that questioned whether the VE's testimony changed with the addition of several new limitations.[4] (Tr. 73-74). In response to the second hypothetical, the VE stated that there "would be no work" available in the local or national economy that such a hypothetical individual could perform. (Tr. 57). Ms. Kirkland contends that the ALJ improperly disregarded this admission in finding her able to perform sedentary work. I disagree. The VE's conclusion in the second hypothetical depended on limitations absent from the RFC. Because the second hypothetical was altered to include impairments for which the ALJ did not find sufficient evidence, the ALJ was under no obligation to credit Plaintiff's counsel's hypothetical or to adhere to the VE's answer.

Finally, in terms of Ms. Kirkland's remaining argument regarding the severity of her right shoulder pain and carpal tunnel syndrome, the ALJ will have the ability to provide further explanation, if desired, on remand.

For the reasons set forth above, Plaintiff's Motion for Summary Judgment (ECF No. 10) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 13) is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

---

[3] Ms. Kirkland also argues that the VE failed to provide responses consistent with the DOT. Pl. Mot. 17-19. Because the case is being remanded on other grounds, the ALJ should, on remand, address the deficiencies identified by Ms. Kirkland to ensure that the VE's testimony is in accordance with the DOT.

[4] Specifically, Plaintiff's counsel's hypothetical noted that Ms. Kirkland "would require the need to take unscheduled breaks to rest and lie down at least every two hours for 30 minutes at a time or more such that the person would be off-task greater than 15 percent of the eight-hour work day, and if the same hypothetical individual would be expected to be absent more than four days per month from any employment for the same reasons[.]" (Tr. 57).

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge